# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAI CHIEU DAM aka Derrick Dam,<br><br>    Plaintiff-Petitioner,<br><br>    v.<br><br>TIMOTHY ROBBINS, Acting Field Office Director of Los Angeles Office of Detention and Removal, U.S. Immigrations and Customs Enforcement, U.S. Department of Homeland Security;<br>TODD M. LYONS, Acting Director, Immigration and Customs Enforcement, U.S. Department of Homeland Security;<br>KRISTI NOEM, in her Official Capacity, Secretary, U.S. Department of Homeland Security; and<br>PAM BONDI, in her Official Capacity, Attorney General of the United States;<br><br>    Defendants-Respondents. | Case No. 2:25-cv-08133-JWH-MAA<br><br>**ORDER DENYING PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER [ECF No. 2]** |

Before the Court is the e*x parte* Application of Petitioner Hai Chieu "Derrick" Dam for a Temporary Restraining Order ("TRO").[1] The Court concludes that this matter is appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support and in opposition,[2] the Court **DENIES** Dam's Application, for the reasons forth below.

## I. BACKGROUND

### A. Procedural History

Dam filed a petition for writ of habeas corpus on August 30, 2025,[3] thereby commencing this action. Four days later, Dam filed the instant Application for a TRO.[4] In accordance with the Court's order setting a briefing schedule,[5] Respondents Timothy Robbins, Todd M. Lyons, Kristi Noem, and Pam Bondi filed an opposition to Dam's Application on September 15, 2025.[6]

### B. Factual Allegations

Dam, a citizen of Vietnam, arrived in the United States as a young child around 1978.[7] In 1980, he was granted status as a United States legal permanent resident.[8] After a series of criminal convictions, on December 2, 2004, Dam's

---

[1] Pl.-Pet.'s *ex parte* Appl. for a Temporary Restraining Order (the "Application") [ECF No. 2].

[2] The Court considered the following papers: (1) Application; (2) Resps.-Defs.' Opp'n to the Application (the "Opposition") [ECF No. 6]; and (3) Pl.-Pet.'s Pet. for Writ of Habeas Corpus (the "Petition") [ECF No. 1].

[3] *See generally* Petition.

[4] *See generally* Application.

[5] *See* (In Chambers) Order [ECF No. 4].

[6] *See generally* Opposition.

[7] Application 7:13-18.

[8] *Id.*

legal permanent resident status was revoked by an immigration judge.[9] However, because the immigration judge found that it was more likely than not that Dam would be tortured if he returned to Vietnam, the immigration judge granted Dam's request for deferral of removal under the Convention Against Torture ("CAT").[10] Dam was then enrolled in the Intensive Supervision Appearance Program ("ISAP"), which imposed certain conditions upon him including annual check-ins with United States Immigration and Customs Enforcement ("ICE").[11] It is under these conditions that Dam has remained in the United States.

In recent years, Dam has accomplished his ICE check-ins at an automated kiosk. On June 12, 2025—the day of Dam's 2025 annual check-in—Dam was prevented from completing his scheduled check-in because of law enforcement and protester presence at the check-in site.[12] Following his incomplete check-in, Dam received a letter dated August 18, 2025, directing him to report to a "Case Officer" for "Interview/Receive immigration paperwork" and to bring "[p]roper identification and any identification from your country of origin such as a passport [and] any immigration/medical documents and medication."[13] Fearing that "this letter is preparing Mr. Dam to be detained . . . and removed or refouled from the country,"[14] Dam filed his Petition and the instant Application for a TRO.

---

[9] *Id.*, Ex. 2 ("Exhibit 2") [ECF No. 2-2].

[10] *See* Application. Both parties appealed the immigration judge's decision, and the Board of Immigration Appeals ("BIA") affirmed it on September 30, 2025. *See id.*, Ex. 3 [ECF No. 2-3].

[11] Application 2:10-17 & 9:1-7.

[12] *Id.* at 10:7-11:1.

[13] *Id.*, Ex. 8 [ECF No. 2-8].

[14] Application 11:13-17.

## II.  LEGAL STANDARD

A TRO preserves the *status quo* and prevents irreparable harm until a hearing may be held on the propriety of a preliminary injunction.  *See Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006).  The standard for issuing a TRO is identical to the standard for issuing a preliminary injunction.  *See Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).  "A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right."  *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (citations omitted).  An injunction is binding only on parties to the action, their officers, agents, servants, employees, and attorneys and those "in active concert or participation" with them.  Fed. R. Civ. P. 65(d)(2).

A party seeking a TRO or a preliminary injunction must establish four elements:  "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction."  *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir.), *as amended* (Mar. 11, 2014) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).  When the nonmoving party is a governmental entity, the last two *Winter* factors "merge."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  However, "[b]ecause [likely success on the merits] is a threshold inquiry, when 'a plaintiff has failed to show the likelihood of success on the merits, [the court] "need not consider the remaining three *Winter* elements."'"  *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (*en banc*) (quoting *Ass'n des Eleveurs de Canards et D'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013)).

### III.  ANALYSIS

**A.    Likelihood of Success on the Merits**

Dam seeks an order enjoining Respondents "(1) from re-arresting and re-detaining Mr. Dam without a showing that he is a flight risk or danger to the public; (2) requiring Mr. Dam to obtain travel papers from the Vietnamese government from which an Immigration Judge (IJ) has found Mr. Dam faces a risk of torture; (3) from removing Mr. Dam to Vietnam in violation of an IJ order and Ninth Circuit order;[15] (4) from refouling or sending Mr. Dam to any third country without a hearing to establish he would be safe in that country; (5) and from placing Mr. Dam in current immigration detention conditions that violate the Fifth Amendment."[16]

First, the Court agrees with Respondents that, with respect to Dam's request for an injunction barring removal to Vietnam or any other third country and an injunction barring a requirement that Dam engage with the government of Vietnam, the Court likely lacks jurisdiction.  The BIA affirmation of Dam's deferral of removal under CAT prevents his removal to Vietnam and forced interaction with its government.[17]  The Ninth Circuit's order staying Dam's removal protects him, for the time being, from removal to any other country.[18] Because Dam's requests have been presently addressed by other adjudicatory bodies, any injunction from this Court would be duplicative.  Thus, the Court concludes that it lacks jurisdiction with respect to those requests.

---

[15]   On June 9, 2025, the Ninth Circuit issued an order staying Dam's removal from the United States pending the resolution of Dam's appeal challenging a BIA decision declining to reinstate Dam's legal resident status in light of the vacatur of one of his California criminal convictions.  *See id.* at 10:1-7.

[16]   *Id.* at 1:1-18.

[17]   Exhibit 2.

[18]   Application, Ex. 5 [ECF No. 2-5].

Next, the Court considers Dam's request for an injunction barring Respondents "from re-arresting and re-detaining Mr. Dam without a showing that he is a flight risk or danger to the public."[19] "The federal courts are limited to deciding 'cases' and 'controversies.'" *Bova v. City of Medford*, 564 F.3d 1093, 1095 (9th Cir. 2009) (quoting U.S. Const. art. III, § 2). One component of the Article III case-or-controversy requirement is ripeness, *see id.* at 1095–96, which, rather than addressing "*who* is a proper party to litigate a particular matter, [] addresses *when* that litigation may occur." *Lee v. Oregon*, 107 F.3d 1382, 1387 (9th Cir. 1997) (emphasis in original). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks and citation omitted).

Here, Dam seeks habeas relief in the form of an injunction preemptively barring Respondents from detaining him without certain due process protections. The Court is not convinced that it has jurisdiction over Dam's habeas petition, as it is not clear that Dam is "in custody" for the purpose of 28 U.S.C. § 2241(c). *See J.P. v. Santacruz*, Case No. 8:25-cv-01640-FWS-JC (C.D. Cal. Aug. 27, 2025) [ECF No. 20] (finding that a petitioner who was released on bond and feared re-detainment was not "in custody" for the purpose of habeas jurisdiction). However, the Court need not reach the issue of habeas jurisdiction because Dam's petition for an injunction barring re-detainment is not ripe.

Dam claims that "[i]n light of credible reports of ICE re-arresting and re-detaining individuals at their ISAP check-ins and in light of credible reports of ICE sending people, even those with CAT protections, to third countries, it is highly likely that on September 18, 2025 Mr. Dam will be re-arrested,

---

[19] Application 1:1-18.

re-detained, and sent to a third-country."[20]  However, in their Opposition, Respondents proclaim that "**ICE does not intend to detain the Petitioner**."[21] Respondents' representation that ICE does not intend to detain Dam makes an already speculative event less likely.  Unlike the circumstance in *Ortega v. Bonner*, 415 F. Supp. 3d 963 (N.D. Cal. 2019), in which a court in this Circuit found a similar petition ripe partly because the Government "refused to provide any assurance that [the petitioner] will not be re-arrested," *id.* at 969 (internal quotations omitted), the Government here has affirmatively represented that "[t]he intention of [ICE] is to place Petitioner on Alternatives to Detention program when he reports to the office on September 18, 2025.  [ICE] does not intend to detain the Petitioner."[22]  Thus, Dam's "claim is not ripe for adjudication [because] it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas*, 523 U.S. at 300 (internal quotation marks and citation omitted).

      Finally, the Court finds that Dam's other argument—that current immigration detention conditions violate the Fifth Amendment—will likely fail on the merits because it is not appropriate for a habeas petition.  The Ninth Circuit has held that a habeas petition is not the proper vehicle for a constitutional challenge to confinement conditions.  *See Pinson v. Carvajal*, 69 F.4th 1059, 1065 (9th Cir. 2023); *Badea v. Cox*, 931 F.2d 573, 574 (9th Cir. 1991).  Thus, because the Court likely lacks jurisdiction to consider such constitutional challenges in a habeas petition, Dam is unlikely to succeed on the merits.

---

[20]     *Id.* at 5:6-14.

[21]     Opposition 3:2-3 (emphasis in original).

[22]     Decl. of Supervisory Detention & Deportation officer Nelly McKenna [ECF No. 6-1] ¶ 12.

Because the Court finds that Dam is not likely to prevail on the merits of his claims, it declines to reach the issues of likelihood of irreparable harm, the balance of equities, or the public interest. *See Garcia*, 786 F.3d at 740.

### IV. DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** that Dam's Application for a Temporary Restraining Order [ECF No. 2] is **DENIED**.

**IT IS SO ORDERED.**

Dated: September 16, 2025

John W. Holcomb
UNITED STATES DISTRICT JUDGE

-8-